**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rudi Bernard SMITH,**
**Defendant–Appellant.**

No. 89–5544.

United States Court of Appeals,
Fourth Circuit.

Argued May 9, 1990.

Decided Sept. 19, 1990.

566

John G. Hackney, Jr., Charleston, W.Va., for defendant-appellant.

Dwane L. Tinsley, Asst. U.S. Atty., Charleston, W.Va., (Michael W. Carey, U.S. Atty., Charleston, W.Va., on brief), for plaintiff-appellee.

Before HALL and WILKINS, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

WILKINS, Circuit Judge:

Rudi Bernard Smith appeals his convictions by a jury of distribution of crack, possession with the intent to distribute crack, and possession of a firearm during and in relation to a drug trafficking crime. 21 U.S.C.A. § 841(a)(1) (West 1981); 18 U.S.C.A. § 924(c)(1) (West Supp.1990). He contends that the evidence was insufficient to convict him of the firearm charge. He challenges on several grounds the admission of evidence seized during a search pursuant to a warrant. Finally, he contends that the district court erred in finding that he was an "organizer" of criminal activity as defined in the sentencing guidelines. We affirm.

I.

While the evidence produced at trial was conflicting, we are required to view the evidence in the light most favorable to the government. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). On August 9, 1988, Lieutenant Larry Dotson of the Kanawha County, West Virginia Sheriff's Department received a call from an individual who identified himself as Willie Rhem. Rhem advised Dotson that he knew a man named Rudi Smith who was selling crack in Charleston, West Virginia. Dotson and Rhem then met at a local nightclub and Rhem informed Dotson that the preceding day he had picked up his brother Melvin at the Red Roof Inn in the Kanawha City section of Charleston. Rhem told Dotson that he entered Room 254 at the Inn and saw Rudi Smith and a girl later identified as Normonica Askew. In the room he observed cocaine, jewelry, razor blades, and a handgun.

Dotson escorted Rhem to his office where Rhem placed a recorded call to Smith in Room 254 of the Inn and arranged a cocaine buy. After the call was placed, officers searched Rhem and his car and placed a transmitter on him. Rhem and Dotson then drove to the parking lot of a nearby grocery store where Dotson gave him $400 in marked United States currency to use in purchasing the cocaine. Dotson and another agent then followed Rhem's car a quarter of a mile to the Inn parking lot.

Dotson observed Rhem enter and exit Room 254 at the Inn. While Rhem was inside the room the surveillance unit monitored and recorded the conversation. After Rhem purchased a quantity of crack from Smith, he drove back to the grocery store where he turned over the contraband to Dotson.

Later that day, Rhem gave a written statement to Dotson regarding the purchase from Smith. After receiving the statement, Dotson prepared an affidavit, presented it to the county magistrate, and obtained a warrant authorizing the search of Room 254. The affidavit stated that a "reliable confidential informant" was observed entering Room 254 where he purchased crack from Smith and that the informant later turned over the crack to Dotson.

After obtaining the search warrant Dotson and other officers returned to the Inn where the motel manager confirmed that Room 254 was registered to Rudi Smith. Pursuant to the officers' request, the manager telephoned Smith and requested that he come to the front desk to clear up a problem with his bill. On his way to the front desk, Smith was arrested. The officers then searched Room 254 and seized over 3 ounces of crack, a purse containing cocaine and over $3,000 in cash, and razor blades. A loaded .22 caliber derringer, found underneath the mattress of the bed and near the purse, was also seized. In addition, officers seized two bags of crack from Smith's person. Askew was arrested nearby.

On August 15, 1988, a federal grand jury returned a four-count indictment against Smith and Askew. Askew was subsequently placed in a pre-trial diversion program. After a jury trial, Smith was convicted of all four counts.[1]

Smith's base offense level for the drug offenses was 32. *See* United States Sentencing Commission, *Guidelines Manual*, § 2D1.1 (Oct.1988). At the sentencing hearing following his conviction, the district court agreed with the recommendation of the presentence report and found that Smith was an "organizer" for sentencing purposes and increased his offense level by 2. *See* U.S.S.G. § 3B1.1(c). Offense level 34 combined with criminal history category

II resulted in a sentencing guidelines range for the drug offenses of 168 to 210 months. The district court imposed a sentence of 168 months and a consecutive 60–month sentence as required for the firearm violation, producing a total sentence of 228 months.

## II.

■ Smith contends that the evidence was insufficient to convict him of violating section 924(c)(1). We have held that to sustain a conviction under this section "it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." *United States v. Brockington*, 849 F.2d 872, 876 (4th Cir.1988). In *Brockington*, the defendant was arrested while a passenger in a taxi. A search of his person incident to arrest yielded cocaine and heroin. Officers also recovered a loaded firearm under the floormat beneath his seat in the cab. Affirming Brockington's section 924(c)(1) conviction, we held:

> [T]here was sufficient evidence for the jury to conclude that Brockington possessed the drugs seized incident to his arrest with the intent to distribute them, and indeed, was in the process of conducting his illegal trade. This evidence, coupled with the common sense recognition that drug dealing is a dangerous and often violent enterprise, more than supports an inference that Brockington carried the weapon to facilitate his "business."

*Id.* (citation omitted).

Viewing the evidence in the light most favorable to the government, ample evidence existed for the jury to have concluded that the derringer was used by Smith "for protection and to facilitate the likelihood of success." First, the loaded gun was found in close proximity to a purse containing cocaine and a large sum of money. Second, both Rhem and Askew testi-

---

1. The jury also convicted Smith of conspiracy to distribute and to possess with the intent to distribute 50 grams or more of crack. The district court granted Smith's motion for acquittal and vacated his conviction of this count.

fied that they had earlier seen the gun on the dresser along with drugs, money, and jewelry. *See United States v. Poole*, 878 F.2d 1389, 1393 (11th Cir.1989) ("[T]he presence of weapons in a location defendant used to distribute a significant quantity of illegal drugs is sufficient to submit to the jury the issue of whether defendant used the firearms in connection with a drug trafficking crime.").

We find *Brockington* dispositive and Smith's attempt to distinguish it unavailing. We therefore affirm the section 924(c)(1) conviction.

## III.

Smith challenges the search of his motel room by asserting that there was a lack of probable cause, that the officers violated state law by not promptly returning the warrant and the property seized pursuant to it to the issuing magistrate, and that the officers violated Rule 41 of the Federal Rules of Criminal Procedure by obtaining a state warrant from a state court not of record to execute a "federal search." We consider these contentions in turn.

## A.

■ Smith attacks the conclusory nature of the affidavit, specifically asserting that the affidavit supporting the search warrant did not establish probable cause because the affiant (Lieutenant Dotson) failed to explain how the "reliable confidential informant" was indeed reliable or how he knew that the informant had observed cocaine in Room 254. This argument is manifestly without merit. The affidavit clearly states that the informant was observed entering a room with no cocaine in his possession, exiting the room, and then turning over cocaine to Dotson. Thus, it is clear that the magistrate had a " 'substantial basis for ... concluding' " that there was "a fair probability that contraband or evidence of a crime" would be found in Room 254. *Illinois v. Gates*, 462 U.S. 213, 238, 103

S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citation omitted).[2]

## B.

■ Smith argues that the warrant and the property seized during the search were not returned to the magistrate within ten days as required by West Virginia Code section 62–1A–4 (1989). As the government correctly notes, however, this section requires only that the warrant, not the seized property, be returned to the magistrate along with an inventory of the property seized. Smith acknowledges this, but points to the statement on the warrant itself requiring the officer to "seize such property and bring the same before me to be dealt with according to law." He maintains further that the government has never shown that the warrant was returned.

The federal analog to West Virginia Code section 62–1A–4 is Rule 41(d) which mandates, *inter alia*, prompt return of federal warrants. We have held that "ministerial" violations of Rule 41(d) "require suppression only if the defendant can demonstrate that he was prejudiced by the violation." *United States v. Wyder*, 674 F.2d 224, 226 (4th Cir.) (collecting cases), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2944, 73 L.Ed.2d 1340 (1982); *see* 2 W. LaFave, *Search and Seizure* § 4.12(c) (1987) ("the 'overwhelming weight of authority' is to the effect that required warrant return procedures are ministerial and that failure to comply with them is not a ground for voiding an otherwise valid search") (quoting *United States v. Kennedy*, 457 F.2d 63, 67 (10th Cir.), *cert. denied*, 409 U.S. 864, 93 S.Ct. 157, 34 L.Ed.2d 112 (1972)). Because Smith has demonstrated no prejudice from the alleged failure of the government to timely return the search warrant, the district court did not err in denying his motion to suppress.

---

**2.** We also reject as meritless Smith's contentions that the officers' search exceeded the scope of the warrant and that the warrant is invalid because the affidavit page was not properly sworn although it was expressly incorporated into an earlier sworn section of the warrant.

## C.

■ Smith next argues that the evidence seized during the search should have been suppressed because the search was federal in nature and the warrant was not issued by either a federal magistrate or a state court of record. Fed.R.Crim.P. 41(a); *see generally* 2 W. LaFave, *Search and Seizure* § 4.2(f) (1987). Smith contends that the search was federal in nature because (1) a Drug Enforcement Administration agent was present at the motel during the search and (2) after the search the matter became largely a federal prosecution. His underlying theory is that Lieutenant Dotson intended these offenses to be prosecuted in federal court from the beginning, but sought a state warrant to avoid an allegedly stricter scrutiny by a federal magistrate.

Lieutenant Dotson, a state police officer, spearheaded the search. Significantly, there is no evidence that he applied for the warrant at the direction or urging of a federal officer. *See, e.g., United States v. MacConnell,* 868 F.2d 281, 284 (8th Cir. 1989) (significant prior involvement by federal officials required before a search may be categorized federal); *United States v. Bookout,* 810 F.2d 965, 967 (10th Cir.1987) (search is federal "when federal officers are directly involved in carrying out the search itself and in taking immediate custody of the fruits of the search"); *United States v. Bedford,* 519 F.2d 650, 654 n. 1 (3d Cir.1975) ("something more than 'mere participation' by federal officers must be found before a state search is transformed into a federal undertaking"), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976). Although a DEA agent was present during the search and requested the motel manager to phone Smith and lure

him from his room, this in itself is insufficient to render the search a federal one. *Cf. United States v. Johnson,* 451 F.2d 1321, 1322 (4th Cir.1971) (mere presence of three federal agents during search insufficient to implicate requirements of Rule 41(a)), *cert. denied,* 405 U.S. 1018, 92 S.Ct. 1298, 31 L.Ed.2d 480 (1972).

## IV.

■ Section 3B1.1(c) of the sentencing guidelines provides that a defendant's offense level may be increased by 2 levels "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b)." A determination by the district court of a defendant's role in the offense is a factual determination and is thus reviewable under the clearly erroneous standard. *United States v. Daughtrey,* 874 F.2d 213, 218 (4th Cir.1989). The sentencing guidelines provide direction to the courts in determining whether a defendant is an organizer:

> Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, comment. (n. 3).

Smith contends the district court erred in finding that he was an organizer. He argues that there is no evidence that Askew and Melvin Rhem did anything other than merely accompany him and therefore only he was criminally responsible for the commission of the offense.[3]

---

**3.** We note that the 168–month sentence imposed on Smith is at the bottom of the sentencing range for level 34, criminal history category II. This overlaps with the high end of the sentencing range for level 32 that would have been applicable had the district court not applied the 2-level increase for role in the offense. Appellate review of the propriety of the increase would therefore be unnecessary "[h]ad the district judge stated that the sentence would have

been the same regardless of which sentencing range had ultimately been determined to be appropriate." *United States v. White,* 875 F.2d 427, 432–33 (4th Cir.1989); *see United States v. Willard,* 909 F.2d 780 (4th Cir.1990); *United States v. McCrary,* 887 F.2d 485, 489 (4th Cir. 1989). Because the district judge did not make such a statement, we consider Smith's claim of error on the merits.

The district court adopted the recommended findings set forth in the presentence report that Smith was an organizer of a conspiracy involving Askew and others to distribute cocaine. The record shows that Smith recruited Askew to travel with him and Melvin Rhem from Florida to West Virginia and that Smith was transporting cocaine during the trip. Also, cocaine and cash were found in Askew's purse in Room 254 during the search, indicating that she was an accomplice. Finally, there was evidence that Smith claimed a larger share of the money received from the drug sales and that he exercised control and authority over Willie and Melvin Rhem while distributing drugs. The finding that Smith was an organizer is not clearly erroneous.

AFFIRMED.