958 F.2d 369
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Isaac George ABBOTT, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
David WINGO, Defendant-Appellant.
 Nos. 90-5549, 90-5552.
 United States Court of Appeals, Fourth Circuit.
 Submitted Feb. 19, 1992.
Decided March 16, 1992.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Jackson L. Kiser, District Judge. (CR-90-64-R)
 Deborah Caldwell-Bono, Roanoke, Va., for appellant Abbott.
 James C. Turk, Jr., Stone, Hamrick, Harrison & Turk, P.C., Radford, Va., for appellant Wingo.
 E. Montgomery Tucker, United States Attorney, Thomas J. Bondurant, Jr., Assistant United States Attorney, Christina Gratke, Third-Year Law Student Intern, Roanoke, Va., for appellee.
 W.D.Va.
 AFFIRMED.
 Before K.K. HALL, SPROUSE and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In these consolidated appeals, Appellants Isaac George Abbott and David Lloyd Wingo appeal their convictions for drug-related offenses. Abbott was convicted, among other things, of conspiracy to possess with intent to distribute marijuana and cocaine, in violation of 21 U.S.C.A. § 841 (West 1981 & Supp.1991); carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c) (West 1976 & Supp.1991); and conspiracy to travel in interstate commerce to promote an unlawful activity, in violation of 18 U.S.C.A. § 1952(a)(3) (West 1984 & Supp.1991). Appellant David Wingo was acquitted of conspiracy but convicted of using or carrying a firearm during or in relation to a drug trafficking crime, in violation of 18 U.S.C.A. § 924(c). Finding no merit to the arguments raised on appeal, we affirm the convictions.
 
 
 2
 In 1989 authorities began investigating drug trafficking in southwest Virginia. Officials learned that Jesse McCoy Whitley was a principal supplier of marijuana and cocaine and that Abbott was a major distributor of cocaine and marijuana that he obtained from Whitley. While Abbott handled most of the mechanics of the organization, his wife, Jewel, managed the money and kept track of accounts. Abbott, in turn, supplied drugs to dealers such as James Stallings.
 
 
 3
 On March 24, 1990, officers were conducting surveillance of a Holiday Inn in Salem, Virginia. They had learned that Whitley was in town to collect approximately $50,000 in drug debts owed to him. One of Whitley's debtors was Stallings, who had begun to buy directly from Whitley, thereby bypassing Abbott. Stallings owed Whitley approximately $10,000.
 
 
 4
 Fearing that Abbott would try to intercept the transaction with Whitley and perhaps do him bodily harm, Stallings solicited the help of two men, including Appellant Wingo. The men were to act as Stallings' bodyguards. There was evidence that Wingo expected to be provided cocaine at cost in return for his services.
 
 
 5
 Officers arrested Stallings, Wingo, and others at the Holiday Inn. They discovered a loaded .38 caliber revolver and a 9 mm. clip on Wingo's person. In his truck, they discovered a loaded 9 mm. Smith and Wesson automatic handgun. Additionally, in a bag belonging to Wingo, officers discovered drug paraphernalia.
 
 
 6
 We reject Wingo's contention on appeal that the court's response to the jury's question on elements of the firearms charge was a misstatement of the law that led the jury into believing it could convict Wingo even if it did not believe he had knowledge of the drug conspiracy. The court accurately set out in its original charge all elements of the offense, including the scienter requirement. The jury asked if Wingo had to be distributing drugs himself in order to be found guilty. The court's response was that he did not; that he instead merely had to possess the gun in aid, assistance, or promotion of the drug transaction. The response was accurate. Viewing the original instruction and the response as a whole, we find the court did not abuse its discretion in responding as it did. See United States v. Horton, 921 F.2d 540, 546 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3850 (U.S.1991); United States v. Iredia, 866 F.2d 114, 118 (5th Cir.), cert. denied, 492 U.S. 921 (1989).
 
 
 7
 We also reject Wingo's contention that the guilty verdict cannot stand in light of his acquittal on the conspiracy charge. The jury could well have believed that while Wingo was not involved in the underlying conspiracy, he was aware of and willing to participate in the transaction that was to occur on March 24, 1990. Moreover, Wingo may not attack his conviction on the firearms charge solely because that conviction may be inconsistent with acquittal on another count. See United States v. Powell, 469 U.S. 57, 64-65 (1984).
 
 
 8
 Abbott claims that there was insufficient evidence to support his convictions on the firearms and Travel Act charges. We disagree. With respect to the firearms charge, we note that when he was arrested, there was a loaded sawed-off shotgun in his car and that, together, he and his wife had on their persons in excess of $4,000. On the day of the arrest, moreover, officers discovered a gun and three pounds of marijuana in a motel room registered to Abbott as well as guns in Abbott's home, where many drug transactions had taken place. This evidence was enough to convict under the statute. See United States v. Smith, 914 F.2d 565, 567-68 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3563 (U.S.1991); United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991).
 
 
 9
 Abbott's contention that there was insufficient evidence to sustain his Travel Act conviction is equally without merit. In United States v. Gallo, 782 F.2d 1191 (4th Cir.1986), we observed:
 
 
 10
 To support a conviction under the Travel Act, 18 U.S.C. § 1952, the government must prove three elements: (a) interstate travel; (b) intent to promote unlawful activity, i.e., a business enterprise; and, (c) performance or attempted performance of an unlawful act ... Section 1952(b) defines "unlawful activity" to mean "any business enterprise involving ... narcotics or controlled substances...."
 
 
 11
 Id. at 1194. We further commented that "a sporadic, casual, individual or isolated violation" would not suffice to establish the business enterprise requirement of the offense. Id. at 1194-95.
 
 
 12
 In this case, the two trips to Texas were part of an ongoing business enterprise. Abbott had been dealing drugs since at least late 1988. Many witnesses testified about the drug ring and about making purchases from Abbott, who had decided to get out of the cocaine business and focus on marijuana. With that goal in mind, he made two trips to Houston in a two-week period, purchasing in excess of two hundred pounds of marijuana.
 
 
 13
 Clearly, the evidence was sufficient to support the conviction. Abbott traveled in interstate commerce, between Virginia and Texas; he did so in order to obtain marijuana which he intended to distribute; and the trips were part of an ongoing business enterprise. See id.
 
 
 14
 Abbott's final contention is that the introduction of $26,000 seized from his home while he was in jail awaiting trial was error because the evidence was unduly prejudicial. The evidence tended to show that persons indebted to Abbott for drug deals continued to make payments to Jewel Abbott after Isaac Abbott was jailed. The district court did not abuse its discretion in finding that the probative value of this evidence outweighed any prejudicial effect. See United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990); Fed.R.Evid. 403.
 
 
 15
 As our review of the record and other materials before us reveals that it would not significantly aid the decisional process, we dispense with oral argument. The convictions are affirmed.
 
 
 16
 AFFIRMED.