35 F.3d 557
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Deborah Kasey POWELL, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Tony Maurice HAIRSTON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stephen Austin PILLARS, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Daniel Russell WOOD, Defendant-Appellant.
 Nos. 93-5230, 93-5254, 93-5354, 93-5519.
 United States Court of Appeals, Fourth Circuit.
 Argued: May 13, 1994.
Decided: September 16, 1994.
 
 Appeals from the United States District Court for the Western District of Virginia, at Roanoke. Samuel G. Wilson, District Court Judge. (CR-92-85-R)
 David Joseph Damico, Damico & Apgar, Roanoke, Virginia; James Clinton Turk, Jr., Stone, Hamrick, Harrison & Turk, P.C., Radford, Virginia; Peter A. Katt, Law Office of Daniel L. Crandall, P.C., Roanoke, Virginia; Deborah S. Caldwell-Bono, Roanoke, Virginia, for Appellants.
 Joseph William Hooge Mott, Assistant United States Attorney, Roanoke, Virginia, for Appellee.
 Daniel L. Crandall, Law Office of Daniel L. Crandall, P.C., Roanoke, Virginia, for Appellants.
 RobertP. Crouch, Jr., United States Attorney, J. Chapman Petersen, Third-year Law Student, Roanoke, Virginia, for Appellee.
 
 
 1
 W.D.Va.
 
 
 2
 AFFIRMED.
 
 
 3
 Before MURNAGHAN, Circuit Judge, LEGG, United States District Judge for the District of Maryland, sitting by designation, and ERWIN, Senior United States District Judge for the Middle District of North Carolina, sitting by designation.
 
 OPINION
 PER CURIAM:
 
 4
 On December 12, 1992, defendants Deborah K. Powell, Tony M. Hairston, Stephen A. Pillars, and Daniel R. Wood were convicted of conspiracy to distribute cocaine and amphetamine. 21 U.S.C. Secs. 841(a)(1), 846. All defendants but Wood were also convicted of other drug-related crimes.[1]
 
 
 5
 In total, defendants raise 15 issues on appeal. We divide them into three groups for analysis: (1) sufficiency of the evidence linking the defendants to a single conspiracy to distribute cocaine and amphetamine; (2) the district court's admission of certain evidence and rulings on motions for mistrial and for judgment of acquittal; and (3) sentencing issues. Finding no error, we affirm the convictions and sentences of all four defendants.
 
 
 6
 * Powell, Hairston, and Pillars contend that there was insufficient evidence to support the guilty verdicts that they were members of a single conspiracy to distribute cocaine and amphetamine. We disagree.
 
 
 7
 The standard of review is whether, viewing the evidence in the light most favorable to the government, any rational juror could have found guilt beyond a reasonable doubt. United States v. Campbell, 977 F.2d 854, 856 (4th Cir.1992), cert. denied, 113 S.Ct. 1331 (1993). We review the issue of sufficiency of the evidence de novo. Id.
 
 
 8
 In order to support a guilty verdict as to the conspiracy count, the government must show that a conspiracy existed, that the defendants had knowledge of the conspiracy, and that the defendants voluntarily joined the conspiracy. United States v. Bell, 954 F.2d 232, 236 (4th Cir.1992); United States v. Meredith, 824 F.2d 1418, 1428 (4th Cir.), cert. denied, 484 U.S. 969 (1987). Knowledge and participation may be shown by circumstantial evidence. Meredith, 824 F.2d at 1428.
 
 
 9
 A single conspiracy exists when there is "one general business venture." United States v. Leavis, 853 F.2d 215, 218 (4th Cir.1988). A conspiracy need not have a "discrete, identifiable organizational structure" and can be linked by a "mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market." United States v. Banks, 10 F.3d 1044, 1054 (4th Cir.1993), cert. denied, 114 S.Ct. 1850 (1994). "Whether there is a single conspiracy or multiple conspiracies depends upon the overlap of key actors, methods, and goals." Leavis, 853 F.2d at 218.
 
 
 10
 Once a conspiracy has been established, it is only necessary to show a "slight connection between the defendant and the conspiracy to support conviction." United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 112 S.Ct. 3051 (1992). That the defendant may have played a minor role in the overall conspiracy is irrelevant. Id. There need only be a showing that the defendant knew of the conspiracy's purpose and took some action indicating participation. United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir.1984), cert. denied, 469 U.S. 1105 (1985). With these principles in mind, we first turn to Powell's claim that there was insufficient evidence linking her to any conspiracy to distribute cocaine and amphetamine.
 
 
 11
 * The evidence adduced at trial showed that, during the late 1980s and early 1990s, there was substantial drug trafficking in the Martinsville, Virginia area. The superseding indictment charges ten Martinsville residents with conspiring to distribute cocaine and amphetamine. Powell contends that she was not a member of this conspiracy and that she merely had a buyer-seller relationship with one of the conspirators.
 
 
 12
 John "Red" Martin, government witness and a drug dealer in Martinsville, testified that Powell regularly bought from and sold cocaine and amphetamine to him. The amounts of the drug transactions varied from one ounce to one-half of a kilogram. Martin testified that Powell took him to her home in Roanoke, Virginia, where he watched as she "cut" cocaine with isotol and packaged it into one-ounce sizes (socalled "eight balls") for Martin to resell in Martinsville. Martin also testified that Powell showed him six ounces of cocaine in the truck of her car. The cocaine had turned black and was unfit for sale, and Powell complained to Martin that she would be $5000 in debt to her suppliers. Martin also sold to Powell a one-half kilogram of cocaine that he had purchased from Tony M. Hairston; Powell complained that she had expected a full kilogram.
 
 
 13
 Another government witness, Toni Thomas, testified that on October 21, 1991 she and Martin went to Powell's home to retrieve a duffel bag containing two ounces of amphetamine (so-called "crank") and three eight-balls of cocaine.[2] The duffel bag was in the living room under a table.[3] During this visit, Thomas also overheard Powell complain to Martin about the high prices he charged for cocaine.[4]
 
 
 14
 After hearing this evidence, a rational jury could have determined that Powell knew of the conspiracy to distribute cocaine and amphetamine. A rational jury could also have concluded that Powell's drug transactions with Martin evinced her participation in this conspiracy. Thus, we hold that the evidence is sufficient to sustain Powell's conviction.
 
 B
 
 15
 Powell and Hairston contend that they should not have been joined with the other defendants charged in the superseding indictment. Rejecting this argument at trial, the district court denied defense motions to sever. We review these rulings under an abuse of discretion standard, United States v. Lane, 474 U.S. 438, 449 n. 12 (1986), and affirm.
 
 
 16
 Under Fed.R.Crim.P. 8(b), "[t]wo or more defendants may be charged in the same indictment ... if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions." Defendants who have been charged in the same con spiracy indictment should be tried together for reasons of efficiency and judicial economy. United States v. Tedder, 801 F.2d 1437, 1450 (4th Cir.1986), cert. denied, 480 U.S. 938 (1987); Rusher, 966 F.2d at 877; United States v. LaRouche, 896 F.2d 815, 831 (4th Cir.) (stating that a district court must weigh the inconvenience and expense to the government and witness for a separate trial against the prejudice to the defendant), cert. denied, 496 U.S. 927 (1990).
 
 
 17
 The superseding indictment in this case charges all four defendants with participation in a conspiracy to distribute cocaine and amphetamine. A court should grant a severance only if it appears that a defendant is "prejudiced" by a joinder of offenses or of defendants. Fed.R.Crim.P. 14; United States v. Rusher, 966 F.2d 868, 877 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992). We will leave undisturbed a court's decision not to sever unless it results in a miscarriage of justice and unless the defendant is deprived of a fair trial. LaRouche, 896 F.2d at 831.
 
 
 18
 To sever the defendants in this case would have forced the government to call many of the same witnesses in separate trials. For example, the primary witness against both Powell and Hairston was Martin. He also testified to drug transactions with the other defendants in the charged conspiracy. Further, Thomas and Fisher, who testified against Powell and Hairston, also testified against the other defendants. Thus, the district court properly viewed severance as a waste of judicial resources. LaRouche, 896 F.2d at 831. Further, curative instructions to the jury, such as those given by the district court in this case,[5] "will go a long way" toward eliminating any prejudice resulting from the effects of joinder. Id. at 831.
 
 C
 
 19
 Powell, Hairston, and Pillars contend that the evidence produced at trial supported the existence not of one conspiracy to distribute cocaine and amphetamine but of two separate conspiracies to distribute each drug. The district court rejected this argument and denied a defense motion for judgment of acquittal as to Count I in the superseding indictment. We review this ruling under a sufficiency of the evidence standard, Brooks, 957 F.2d at 1147, and affirm.
 
 
 20
 Martin, the center of the Martinsville drug ring, testified that Powell and Hairston supplied him with cocaine.[6] The transactions, usually weekly, involved amounts that varied from one ounce to one-half of a kilogram.[7] Indeed, on one occasion, Martin purchased one-half of a kilogram from Hairston and sold it to Powell.[8]
 
 
 21
 Hairston also supplied cocaine to Billy Fisher--once for an ounce and another time for a kilogram.[9] At the same time, Fisher manufactured amphetamine with chemicals he purchased from Pillars.[10] These chemicals included one gallon of acetic anhydride and 50 pounds of sodium acetate, both of which Fisher acquired at Pillar's home.[11]
 
 
 22
 Another government witness, Mike Hudson, a manufacturer of amphetamine in the Martinsville area, testified that he purchased cocaine from Pillars after learning from Jeanne Jamison that Pillars supplied her with cocaine.[12] Hudson also testified that Pillars told him that he had three kilograms for distribution.[13] Hudson further testified that he arranged for Pillars to sell an ounce of cocaine to Agent David High of the Drug Enforcement Agency.[14]
 
 
 23
 A rational jury could have found that there was sufficient overlap of Powell, Hairston, and Pillars, their methods, and their goals to warrant the conclusion that there was a single conspiracy to distribute cocaine and amphetamine. Thus, the district court did not abuse its discretion in denying the motion for judgment of acquittal.
 
 II
 
 24
 Hairston, Pillars, and Wood challenge the district court's admission of certain testimony and its rulings on motions for mistrial and for judgment of acquittal. We affirm.
 
 
 25
 * With respect to the evidence, Hairston challenges the introduction of testimony concerning the incident in which Mike Weaver and Pillars cut the throat of Mike Hudson because they believed Hudson was a "snitch." As a matter of law, a district court's evidentiary rulings are entitled to substantial deference and will not be reversed absent a clear abuse of discretion. United States v. Russell, 971 F.2d 1098, 1104 (4th Cir.1992), cert. denied, 113 S.Ct. 1013 (1993); United States v. Simpson, 910 F.2d 154, 157 (4th Cir.1990). Such abuse occurs only when the trial court acts "irrationally" or "arbitrarily" in admitting the evidence. United States v. Ham, 998 F.2d 1247, 1252 (4th Cir.1993); Simpson, 910 F.2d at 157; United States v. Masters, 622 F.2d 83, 88 (4th Cir.1980).
 
 
 26
 The district court first heard all the evidence concerning the throatcutting incident out of the jury's presence and ruled that it was admissible as evidence of Pillar's consciousness of guilt. The district court admitted the evidence against Pillars only, and, contrary to Hairston's argument, twice cautioned the jury about this limitation.[15] Further, Hairston, who raises this issue, was not implicated in the incident at all. While the testimony concerning the throat-cutting of Hudson may have been somewhat prejudicial, the district court did not act irrationally or arbitrarily in admitting it.
 
 B
 
 27
 Hairston also contends that the trial court erred in denying his motion for judgment of acquittal as to Counts 23 and 25. Both counts involve the use or carrying of a firearm during and in relation to a drug trafficking crime. See 18 U.S.C. Secs. 2, 924(c). Each count alleges the occurrence of such a crime on a different date (Count 23--April 15, 1992; Count 25--May 21, 1992).
 
 
 28
 We review a denial of a motion for acquittal under a sufficiency of evidence standard. Fed.R.Crim.P. 29; Brooks, 957 F.2d at 1147. "To sustain a conviction the evidence, when viewed in the light most favorable to the government, must be sufficient for a rational trier of fact to have found the essential elements of the crime beyond a reasonable doubt." United States v. Brewer, 1 F.3d 1430, 1437 (4th Cir.1993); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979); Campbell, 977 F.2d at 856; United States v. Sloley, 19 F.3d 149, 152 (4th Cir.1994), cert. denied, 1994 WL 229454 (U.S. June 27, 1994) (No. 93-9229).
 
 
 29
 A defendant need not actually discharge or brandish a firearm to come within the ambit of the statute. United States v. Paz, 927 F.2d 176, 179 (4th Cir.1991). We have previously held that "it is enough if the firearm is present for protection and to facilitate the likelihood of success, whether or not it is actually used." United States v. Brockington, 849 F.2d 872, 876 (4th Cir.1988). See also Paz, 927 F.2d at 179 (stating that because a "gun was present and accessible, even though under a mattress, ... there is little question that its presence would help facilitate the success of the criminal undertaking"); United States v. Smith, 914 F.2d 565, 567-68 (4th Cir.1990) (holding that a loaded .22 caliber derringer found under a mattress in the room where the drug transaction occurred was "used" by defendant within the meaning of Section 924(c)), cert. denied, 498 U.S. 1101 (1991).
 
 
 30
 As to Count 23, government witness Billy Fisher testified that, immediately after a meeting to discuss a drug transaction, Hairston showed him a .40 caliber Glock semi-automatic pistol which was concealed in Hairston's vehicle. Fisher had arranged the meeting to purchase a kilogram of cocaine.[16] Fisher also testified to two additional meetings with Hairston later that same day--one at the 220 Repair Station and another at Fisher's nightclub.
 
 
 31
 A reasonable jury could conclude that Hairston's weapon embold ened him during the meetings with Fisher or that it had a role in the April 15, 1992 drug transaction. Thus, Hairston's possession of the weapon falls within the meaning of 18 U.S.C. Sec. 924(c), and the conviction on Count 23 must be sustained.
 
 
 32
 As to Count 25, Fisher testified that, prior to the May 21, 1992 arrest of the Hairston brothers and Fisher, he and Hairston had consummated a drug transaction at Hairston's home.[17] After Hairston and the others were arrested, weapons were found in Hairston's home and in his Dodge Daytona parked in front of his home.[18] Thus, based on the testimony of Fisher and Agent High, a reasonable jury could have found that Hairston had access to the weapons during the drug transaction on May 21, 1992. Viewed in the light most favorable to the government, these weapons could reasonably have emboldened Hairston or otherwise facilitated the drug transaction. See Smith, 914 F.2d at 567.
 
 C
 
 33
 Pillars contends that the trial court improperly denied his motion for a mistrial. We disagree.
 
 
 34
 We review a trial court's ruling on a motion for mistrial under the abuse of discretion standard. United States v. Herrara, 832 F.2d 833, 836-37 (4th Cir.1987). We have recently held that "prejudice can generally be obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of overwhelming evidence of guilt." Ham, 998 F.2d at 1254.
 
 
 35
 In this case, the motion for mistrial arose after the government asked Red Martin, a witness for the prosecution, whether Pillars was carrying a gun when he made purchases from Martin.[19] Before counsel could object, Martin answered in the affirmative.[20] After a bench conference, the trial court instructed the jury to disregard the[21] comments.
 
 
 36
 Any impropriety in the challenged statement did not prejudice Pillars. Five witnesses testified to his substantial role in the conspiracy. Further, the single statement did not infect the five-day trial so as to warrant a mistrial, and the district court did not abuse its discretion in denying the motion.
 
 III
 
 37
 Powell, Pillars, and Wood raise a total of seven sentencing issues. Six of these issues relate to the district court's findings of fact at sentencing. The seventh issue relates to the admission of the testimony of Jeanne Jamison at the sentencing of Wood. Finding no error, we affirm the sentences of all defendants.
 
 
 38
 A district court's finding of facts will be upheld unless clearly erroneous. 18 U.S.C. Sec. 3742(e); see Smith, 914 F.2d at 569; United States v. Goff, 907 F.2d 1441, 1444 (4th Cir.1990). Such determinations need be supported by a preponderance of the evidence. Brooks, 957 F.2d at 1148.
 
 
 39
 * Powell contends that there was no evidence to support the district court's determination of the relevant quantity of drugs. Powell also asserts that the district court erroneously failed to grant her a fourlevel downward adjustment for a minimal role in the conspiracy.
 
 
 40
 In determining the amount of drug weight for which a defendant will be held responsible, the district court may take into account the criminal conduct of others that was "reasonably foreseeable in connection with [ ] the criminal activity jointly undertaken by the defendant." U.S.S.G. Sec. 1B1.3, comment. (n.2). The commentary in Sec. 1B1.3 also provides that, in conspiracies involving drug offenses, the court may vary the quantity for which each individual participant will be held responsible. See United States v. Gilliam, 987 F.2d 1009, 1012 (4th Cir.1993).
 
 
 41
 Red Martin and Toni Thomas testified to drug transactions with Powell totalling 850.5 grams of cocaine. First, Martin testified to several transactions at Powell's home in Roanoke, Virginia of an ounce or two at a time on a weekly or bi-weekly basis throughout the fall of 1989. The government estimated that these deals involved one ounce every two weeks for two months (113.4 grams). Martin also testified that he picked up ten ounces of cocaine from Hairston in September 1992 and brought it to her (510.3 grams). Powell showed Martin five ounces of cocaine in the trunk of her car which she and Martin had been unsuccessful in selling (141.75 grams).
 
 
 42
 Further, Thomas testified that she and Martin traveled to Powell's home to pick up two ounces of crank and three eight-ball samples of cocaine (56.7 grams). According to Thomas, the drugs were located in a duffel bag in Powell's living room. Thomas also heard Powell complain to Martin about his high cocaine prices.
 
 
 43
 As a whole, this testimony shows a jointly-undertaken criminal agreement in which the defendants committed acts that were reasonably foreseeable to each other in furtherance of the conspiracy. United States v. Adams, 988 F.2d 493, 496 (4th Cir.1993). Powell is therefore accountable for the drug transactions discussed supra, and we hold that the district court did not err in assigning a 850.5 gram drug weight to Powell.
 
 
 44
 Further, after hearing this evidence, the district court could also reasonably conclude that Powell was more than a minimal member of the drug conspiracy. Thus, we hold that the district court did not abuse its discretion in denying Powell's motion for a four-level decrease in offense level as a "minimal participant." See United States v. Richardson, 939 F.2d 135, 139 (4th Cir.1991), cert. denied, 112 S.Ct. 942 (1992).
 
 B
 
 45
 Pillars contends that the district court erred in attributing the weight of precursor chemicals to him. We disagree.
 
 
 46
 According to the Fourth Circuit, a defendant's possession of types and quantities of drugs not specified in the count of conviction is to be considered for sentencing purposes if it is part of the same course of conduct, common scheme, or plan of the offense of conviction. United States v. Williams, 977 F.2d 866, 870 (4th Cir.1992), cert. denied, 113 S.Ct. 1342 (1993); see U.S.S.G. Sec. 1B1.3(a)(2). The government must establish such conduct by a preponderance of the evidence, and we review the district court's determination under the clearly erroneous standard. Id.
 
 
 47
 In this case, Billy Fisher testified that he purchased from Pillars chemicals for the manufacture of crank. Specifically, in January 1992, Pillars sold to Fisher one gallon of acetic hydrate and 50 pounds of sodium acetate.[22] There was additional evidence linking Pillars to the Martinsville drug conspiracy. Several witnesses, including Toni Thomas, Red Martin, and Mike Hudson, testified that they had bought or sold cocaine to Pillars.[23] Thus, the district court reasonably concluded that Pillars' sale of the chemicals related to his involvement with the conspiracy. The attribution of the precursor chemicals to Pillars was not clearly erroneous.
 
 
 48
 Pillars also contends that the district erred in giving him a twopoint upward adjustment for obstruction of justice. We disagree.
 
 
 49
 On November 25, 1992, Pillars and Mike Weaver encountered Mike Hudson, a government witness, at Tom's Diner in Martinsville. This occurred approximately 13 months after Weaver had arranged a controlled sale between Pillars and Agent High and three months after the grand jury had indicted the defendants. Pillars threatened Hudson, and, after giving Weaver a signal, Weaver cut Hudson in the throat. According to Leisa Branch, a waitress in Tom's Diner on the night of the incident, Pillars had threatened Hudson before the throatcutting occurred. She also testified that Pillars told her later that he did not intend for the incident to occur in the diner. Before the incident, Pillars stated to Branch that he "was going to take care of [Hudson]" because Hudson had "busted him for drugs."[24] Additionally, Wayne Hurley testified that Pillars offered him money to kill Hudson. In view of this evidence, the district court's decision to add two points for obstruction of justice is not clear error.
 
 C
 
 50
 Lastly, Wood raises four issues related to sentencing. First, Wood contends that the district court erred in assessing the amount of drugs attributable to him. The court found that the amount of cocaine attributable to Wood was more than 2.0 kilograms but less than 3.5 kilograms, giving him a base offense level of 28.[25] In making this determination, the court relied on the testimony of Red Martin and Jeanne Jamison. Martin stated that in September 1991 he saw a kilogram of cocaine on the kitchen in Wood's residence. Jamison stated that there was a second purchase of a kilogram of cocaine in November 1991. Jamison also testified that in February 1992 she changed $10,000 from small bills to $100 bills and gave the money to Wood, who then travelled to Florida to purchase cocaine. There was also testimony of other smaller drug transactions involving Wood. The evidence supports the conclusion that at least two kilograms of cocaine was attributable to Wood. Thus, the district court did not commit clear error in assessing Wood's relevant conduct.
 
 
 51
 Second, Wood argues that the district court erred in enhancing Wood's offense level by two points for obstruction of justice. We review the district court's finding of obstruction for clear error. United States v. Saintil, 910 F.2d 1231, 1233 (4th Cir.1990).
 
 
 52
 An upward adjustment is warranted if a defendant commits perjury. See U.S.S.G. Sec. 3C1.1, comment. (n.3(b)). The district court found that Wood had testified with the intent to deceive on a material matter at trial.[26] Specifically, Wood testified at trial that he was not a drug dealer. He admitted at sentencing, however, that this was a lie and that he had indeed been involved in drug trafficking.[27] Thus, the dis trict court's two-point upward adjustment is directly supported by Wood's own testimony.[28]
 
 
 53
 Third, Wood contends that the district court erred in not decreasing his offense level for acceptance of responsibility. Under U.S.S.G. Sec. 3E1.1(a), a district court may impose a two-level reduction for a defendant who "clearly demonstrates acceptance of responsibility for his offense." We review this issue under the clearly erroneous standard. United States v. Cusack, 901 F.2d 29, 31 (4th Cir.1990).
 
 
 54
 After conviction but before he took the stand at sentencing, Wood only accepted responsibility for the least damaging of his conduct.[29] He told the probation officer preparing the presentence report that he did not conduct any drug transactions with Red Martin.[30] Indeed, Wood denied that he was a drug dealer at all.[31] The district court adopted these findings and refused to grant a two-point reduction in total offense level under U.S.S.G. Sec. 3E1.1(a). Based on the evidence of Wood's involvement in the drug conspiracy, we hold that such a determination was not erroneous.[32]
 
 
 55
 Finally, Wood argues that the introduction of Jeanne Jamison's testimony at sentencing was improper because he had a limited opportunity to rebut her testimony. We disagree.
 
 
 56
 If the source of information is reliable, district court may consider virtually any evidence at sentencing. United States v. Bowman, 926 F.2d 380, 381 (4th Cir.1991). The advent of the Sentencing Guidelines has not changed this rule. Id. In this case, Jamison pled guilty on the day before Wood's sentencing hearing on June 29, 1993. At the hearing, Jamison testified that in November 1991 she and Wood returned from Florida with a kilogram of cocaine. She also testified that in February 1992 she changed $10,000 from small bills to $100 bills and gave the money back to Wood to take to Florida to purchase cocaine.
 
 
 57
 The sentencing hearing had been continued two or three times to allow Wood and Pillars the opportunity to prepare for Jamison's testimony and to develop any rebuttal evidence.[33] Wood had the opportunity to cross examine Jamison and to present rebuttal evidence. Wood also testified at his sentencing and admitted driving to Florida to purchase cocaine.[34] Thus, Wood himself confirmed some of Jamison's testimony, and the district court did not err in permitting Jamison to testify at the sentencing.
 
 IV
 
 58
 The convictions and sentences of all defendants are hereby
 
 
 59
 AFFIRMED.
 
 
 
 [1]
 The additional convictions include: (1) Powell--one count of possession of cocaine with intent to distribute; (2) Hairston--two counts of distribution of cocaine; two counts of use or carrying a firearm during and in relation to a drug trafficking crime; and one count of possession of cocaine with intent to distribute; and (3) Pillars--one count of distribution of cocaine
 
 
 [2]
 Appendix (Vol. II) at 41-42, 44
 
 
 [3]
 Id. at 44
 
 
 [4]
 Id. at 42-43
 
 
 [5]
 Appendix (Vol. I) at 267, 359
 
 
 [6]
 Appendix (Vol. I) at 138, 144
 
 
 [7]
 Id. at 144, 148
 
 
 [8]
 Id. at 148
 
 
 [9]
 Appendix (Vol. II) at 408, 414
 
 
 [10]
 Id. at 398-401
 
 
 [11]
 Id. at 405-06
 
 
 [12]
 Appendix (Vol. I) at 286, 292-95
 
 
 [13]
 Id. at 291
 
 
 [14]
 Id. at 292-95
 
 
 [15]
 See Appendix (Vol. I) at 267, 359
 
 
 [16]
 Appendix (Vol. II) at 411
 
 
 [17]
 Id. at 414
 
 
 [18]
 Appendix (Vol. I) at 74, 77-78
 
 
 [19]
 Appendix (Vol. I) at 160
 
 
 [20]
 Id
 
 
 [21]
 Id. at 169
 
 
 [22]
 Appendix (Vol. II) at 405-06
 
 
 [23]
 Appendix (Vol. I-II) at 123, 157-60, 286-95
 
 
 [24]
 Appendix (Vol. I) at 215
 
 
 [25]
 Appendix (Vol. II) at 629
 
 
 [26]
 Appendix (Vol. II) at 629
 
 
 [27]
 Id. at 598
 
 
 [28]
 Id. at 629
 
 
 [29]
 Appendix (Vol. III) at 700
 
 
 [30]
 Appendix (Vol. II) at 591
 
 
 [31]
 Appendix (Vol. III) at 715
 
 
 [32]
 We have already upheld the district court's two-point upward adjustment for Wood's obstruction of justice. See supra notes 26-28 and accompanying text. An enhancement for obstruction of justice "ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct." United States v. Melton, 970 F.2d 1328, 1335-36 (4th Cir.1992)
 
 
 [33]
 Appendix (Vol. II) at 559-60
 
 
 [34]
 Id. at 596-97