**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 95-5720

BERNARD DONNELL SHERRILL, a/k/a
Nard,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Terrence W. Boyle, District Judge, sitting by designation.
(CR-95-5)

Argued: March 3, 1997

Decided: March 28, 1997

Before WILKINSON, Chief Judge, HALL, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Norman Butler, Charlotte, North Carolina, for Appellant.
Gretchen C. F. Shappert, Assistant United States Attorney, Charlotte,
North Carolina, for Appellee. **ON BRIEF:** Mark T. Calloway, United
States Attorney, Charlotte, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Bernard Donnell Sherrill was convicted of one count of conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base within 1000 feet of a school and a playground, in violation of 21 U.S.C.A. §§ 841(a)(1), 846, & 860 (West Supp. 1996). He appeals from his conviction and life sentence. We affirm.

I

The evidence presented at trial demonstrates that Sherrill was a member of a large-scale cocaine and crack distribution network that operated in the Charlotte, North Carolina area during the early 1990s. The primary leaders and organizers of the conspiracy were Paul Mobley and his nephews, Darwin and Jesse Mobley. The Mobleys, along with other family members and recruited associates, purchased large quantities of cocaine that they converted into crack cocaine for distribution. Sherrill worked as a distributor for the Mobleys and others and also recruited other individuals to distribute crack cocaine and find new purchasers.

During trial, the district court actively intervened and questioned witnesses. Sherrill has identified over 100 questions asked by the court during Darwin Mobley's testimony. The substance of the questions involved information mostly related to how the cocaine distribution process worked. Many were intended to educate the jury regarding the terms used by the witnesses. The trial judge instructed the jury three times that they were not to draw any inferences from the fact that he was asking questions, and he explained that he was attempting to make the testimony more understandable to laypersons. Sherrill alleges, however, that the trial court's conduct -- the court's interrupting of defense counsel during his examination of witnesses, conducting questioning of government witnesses, and making com-

2

ments in the presence of the jury -- showed partiality in favor of the government.

Sherrill complains that the judge's questions often elicited information that was damaging to him. He cites one exchange between the judge and the Assistant United States Attorney during defense counsel's cross-examination of a government witness. The judge asked the prosecution, "[w]hy don't you object to evidence that has nothing to do with it? You have a duty as an officer of the court." While Sherrill cites this exchange as evidence of the judge's partiality, he does not explain how it demonstrates prejudice, as partiality or prejudice are not clear from this exchange. Sherrill does not point to any other particular exchange as evidence of partiality or prejudice and instead cites to the record as a whole.

A claim that district court's behavior deprived a defendant of a fair trial is reviewed for abuse of discretion. United States v. Castner, 50 F.3d 1267, 1272 (4th Cir. 1995). The district court has the authority to interrogate witnesses. Fed. R. Crim. P. 614(b). The trial court is vested with the duty to assist the jury, including"explaining, summarizing, and commenting on the evidence." Seidman v. Fishburne-Hudgins Educ. Found., Inc., 724 F.2d 413, 417 (4th Cir. 1984). Absent a high degree of favoritism or antagonism making a fair judgment impossible, a judge's courtroom administration is immune and does not establish bias or partiality on behalf of the court. Liteky v. United States, 510 U.S. 540 (1994).

The substance of the questions asked involved information mostly related to how the cocaine distribution process worked. Many were intended to educate the jury regarding the terms and measurements used by the witnesses. While the court did extensively participate in lines of questioning, especially with the government's key witness, Darwin Mobley, the questions were not leading, and it does not appear that the court intended to ask questions that would incriminate Sherrill.

Twice during examination of witnesses and once during his closing charge to the jury, the trial judge explicitly instructed the jury that they were not to draw inferences from the fact that he was asking

3

questions. We find that the court's conduct did not constitute an abuse of discretion, and Sherrill's right to a fair trial was not violated.

II

During cross-examination, the Assistant United States Attorney questioned Sherrill about whether he had ever owned a 1979 Mercedes automobile. The government introduced a tax document showing that he owned a "1979 Merc." Sherrill denied ever owning or knowing about a 1979 Mercedes. During her closing argument, the Assistant United States Attorney again mentioned the Mercedes. She said, "[the witnesses] talked about a Mercedes. The defendant yesterday denied he owned a Mercedes, but he's listed on the tax records of Iredell County as owning that vehicle." In his closing, defense counsel explained "that there was absolutely no evidence of any Mercedes driven by Mr. Sherrill. . . . And all of a sudden, [the Assistant United States Attorney] says there was evidence about a Mercedes. You saw the form. It says -- it looks like a Mercury to me, M-e-r-c. I mean, I don't know what that code means."

Sherrill alleges that the questioning by the Assistant United States Attorney regarding ownership of a 1979 Mercedes and reference to that line of questioning in her closing argument violated due process and his right to a fair trial. Defense counsel did not object at the time of questioning or during the closing argument. Defendant's counsel discussed the ownership issue in his closing, but did not object to the references on the record. After trial, but before sentencing, the defense obtained a motor vehicle record that showed Sherrill had owned a 1979 Mercury Zephyr.

Because the defense did not object to the statements, we review for plain error. See United States v. Olano, 507 U.S. 725, 732 (1993). When reviewing for plain error in the context of alleged prosecutorial misconduct, we "review the entire proceedings to see if the misconduct undermined the trial's fundamental fairness." United States v. Adam, 70 F.3d 776, 780 (4th Cir. 1995). We find it did not.

In this case, evidence of Sherrill's drug involvement was overwhelming. Seven dealers, with whom he had direct involvement, testified at trial that they had contact and dealings with him regarding

4

cocaine distribution. These witnesses testified that Sherrill sold crack cocaine in the Tanglewood neighborhood of Charlotte and in surrounding towns. Sherrill's home and pager numbers appeared in Darwin Mobley's address book. In addition, three other witnesses testified that they sold crack cocaine for Sherrill in other areas.

Stray improper remarks by a prosecutor during closing argument, where evidence of guilt is already strong, are not prejudicial enough to warrant granting a new trial. See United States v. Harrison, 716 F.2d 1050, 1052-53 (4th Cir. 1983). We hold that the overwhelming evidence, coupled with Sherrill's failure to demonstrate prejudice, defeats the claim of plain error.

III

Sherrill also alleges that the court erred in imposing a two-level firearms enhancement to his base offense level under USSG § 2D1.1(b) because the evidence at the sentencing hearing did not support imposing the enhancement. The standard of review regarding factual findings by the district court during sentencing is for clear error. United States v. Melton, 970 F.2d 1328, 1332-33 (4th Cir. 1992).

The commentary to the guidelines states that the enhancement is appropriate "if the weapon was present." USSG§ 2D1.1(b)(1) comment. (n. 3). At sentencing, the government summarized the trial testimony regarding the use of firearms in the conspiracy. It was stated that Clinton Henderson observed firearms at Sherrill's residence during the time of the conspiracy and testified that other conspirators always carried weapons during drug deals. The government further reminded the court that Darwin Mobley, Jesse Mobley, and Paul Mobley all testified to their use of firearms. Finally, the government reminded the court that Darwin Mobley testified that he observed a gun in Sherrill's car. Darwin Mobley testified that Sherrill said that if the dealer they were waiting for did not have the drugs, he would kill him. In addition, portions of the Offense Conduct in the Presentence Report, to which the defense did not object, contained several overt acts committed by co-conspirators with firearms and possessed in furtherance of the conspiracy.

5

An enhancement under USSG § 2D1.1(b) is permissible if possession of a firearm by a co-conspirator was reasonably foreseeable to defendant. United States v. Kimberlin, 18 F.3d 1156, 1160 (4th Cir. 1994). In this case, the possession by Sherrill's co-conspirators was not only foreseeable, it was well known to him, and there was testimony that he possessed a firearm in connection with a drug deal himself. We therefore hold that there was sufficient proof for the district court to impose the enhancement.

IV

At the sentencing hearing, the government asked for an adjustment to increase the offense level under USSG § 3B1.1 for Sherrill's role in the offense as a supervisor or manager. Sherrill objected to the enhancement and argued that he disagreed with the testimony presented at trial regarding all persons who claimed to have worked for him. The district court found a two-level increase appropriate based upon evidence that Sherrill was a supervisor and manager or organizer of at least three persons.*

The determination that the defendant was an organizer or leader in the offense is essentially a factual question reviewable for clear error. United States v. Sheffer, 896 F.2d 842, 846 (4th Cir.); see United States v. Smith, 914 F.2d 565, 569 (4th Cir. 1990). The finding must be articulated and supported by evidence, United States v. Harriott, 976 F.2d 198, 202 (4th Cir. 1992), but the court need only address relevant factors. United States v. Harris, 39 F.3d 1262, 1270 (4th Cir. 1994).

_____

*Sherrill contends that there is insufficient evidence for an adjustment under § 3B1.1(b). While the PSR recommended a three-level adjustment under § 3B1.1(b), the court specifically found Sherrill was a supervisor or organizer of at least three persons. The enhancement for the supervisor of at least three persons falls under § 3B1.1(c). Section 3B1.1(c) calls for a two-level adjustment, compared to the three-level adjustment for the supervisor or manager of at least five people under§ 3B1.1(b). Although the court did not specifically state that the enhancement was pursuant to § 3B1.1(c), the record demonstrates that the court intended to apply that section.

6

An enhancement under § 3B1.1 is appropriate if the defendant was "the organizer or leader, manager, or supervisor of one or more other participants." USSG § 3B1.1, comment. (n. 3). Enhancements for a defendant's leadership role in a conspiracy have been applied in recruitment and control situations, such as where the defendant recruited another individual to accompany him on a drug purchasing trip or exercised control over co-conspirators in the distribution of drugs. United States v. Kincaid, 964 F.2d 325, 329 (4th Cir. 1992); Smith, 914 F.2d at 570.

At trial, Darwin Mobley listed at least five people who distributed drugs for Sherrill. Clinton Henderson testified that he located drug purchasers for Sherrill, and he and other witnesses named other people who sold drugs for him. This evidence overwhelmingly supports at least a two-level enhancement. At the sentencing hearing, the government restated the testimony regarding the persons that worked for Sherrill, which we find supports the enhancement imposed.

We therefore affirm Sherrill's conviction and sentence.

AFFIRMED

7