# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

TIMOTHY LEE CLARIDY,

*Defendant-Appellant.*

No. 08-5025

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(1:07-cr-00244-RDB-1)

Argued: December 3, 2009

Decided: April 9, 2010

Before TRAXLER, Chief Judge,
NIEMEYER, Circuit Judge, and
John Preston BAILEY, Chief United States District Judge
for the Northern District of West Virginia,
sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the
opinion, in which Judge Bailey joined. Chief Judge Traxler
wrote a separate concurring opinion.

## COUNSEL

**ARGUED**: Meghan Suzanne Skelton, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for

Appellant. Michael Joseph Leotta, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Baltimore, Maryland, for Appellant. Rod J. Rosenstein, United States Attorney, Philip S. Jackson, Assistant United State Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

---

## OPINION

NIEMEYER, Circuit Judge:

Based on evidence seized during the execution of a search warrant at a townhouse in Baltimore County, Maryland, where Timothy Claridy resided, Claridy was convicted of conspiracy to distribute heroin, in violation of 21 U.S.C. § 846; possession with intent to distribute heroin, in violation of 21 U.S.C. § 841; and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g). The district court sentenced Claridy to 240 months' imprisonment.

On appeal, Claridy contends that the evidence seized under the search warrant should have been suppressed because a federally deputized Baltimore City police officer, participating in a joint task force, obtained the warrant from a state court judge before an attempt was made to obtain it from a federal magistrate judge, in violation of Federal Rule of Criminal Procedure 41(b). The Rule authorizes a state judge to issue a warrant when a federal magistrate judge is not "reasonably available." Claridy also argues that an inculpating statement that he made several hours after his arrest should be suppressed because, he claims, it was made after an unreasonable delay, in violation of 18 U.S.C. § 3501(c) and *Corley v. United States*, 129 S. Ct. 1558 (2009).

While the applicability of Rule 41 to search warrants obtained in investigations conducted jointly by federal and

state law enforcement officers has not been clearly defined in our precedents, we conclude that, based on the circumstances in this case, Rule 41 did not govern the search warrant challenged by Claridy. Moreover, even if Rule 41 did apply, Claridy was not prejudiced by the claimed violation and therefore would not have been entitled to suppression of the evidence seized during the search. We also reject as unsupported by the evidence Claridy's argument that his inculpating statement was made after an unreasonable delay after his arrest. Accordingly, we affirm.

I

Based on information obtained from confidential informants and by extensive surveillance of Timothy Claridy and Flora Jones by officers of a joint federal-state law-enforcement task force, Baltimore City Detective Keith Gladstone, who was a 15-year veteran of the Baltimore City Police Department and had been deputized federally to participate in the joint task force, obtained a search warrant from a Maryland state court judge. The warrant authorized Baltimore City and Baltimore County police to search the townhouse where Claridy and Jones were apparently living and to seize evidence relating to violations of the narcotics laws of the State of Maryland, particularly Maryland Criminal Code, §§ 5-101 through 5-1101 and § 7-104. Detective Gladstone presented an application for the search warrant to a Maryland District Court judge "after hours" on May 21, 2007, and the judge reviewed the application and signed the warrant. Gladstone and other officers of the joint task force, including federal agents, then executed the warrant the next day, on May 22, 2007. Claridy was present during the course of the search and told the officers before any items were seized that heroin and a gun were in the upstairs closet. The search resulted in recovery of heroin, a small bag of marijuana, scales, a .357 Smith and Wesson revolver, and paperwork in Claridy's name.

The joint task force, of which Detective Gladstone was a member, was a federally funded effort organized to operate in

a "High Intensity Drug Trafficking Area" (HIDTA), and it included both agents of the federal Drug Enforcement Administration and local police officers from Baltimore City and Baltimore County. During the course of its operations, the HIDTA joint task force made hundreds of arrests relating to suspected drug-trafficking violations, of which, Detective Gladstone estimated, 90% resulted in state prosecutions and 10% in federal prosecutions. When the joint task force was initially investigating Claridy and Jones, it had not been determined whether any crimes that might be uncovered would be prosecuted in federal court or state court. At the time, the investigation was "just [a] narcotics investigation[]."

After completing the search of the townhouse, however, Detective Gladstone took Claridy to Baltimore City Central Booking as a "federal" detainee and, the next morning, took him to federal court pursuant to a federal criminal complaint to make his initial appearance there. Claridy was thereafter charged by a federal grand jury for violating federal law.

Prior to trial, Claridy filed a motion to suppress the evidence obtained through the warrant based on a violation of Federal Rule of Criminal Procedure 41(b). He contended that suppression was warranted because Detective Gladstone had obtained the warrant from a state judge, without having first attempted to obtain it from a federal magistrate judge, in violation of the Rule. *See* Fed. R. Crim. P. 41(b). He argued that because the investigation was federal in nature, Rule 41 applied, and Detective Gladstone was not authorized to seek a warrant from a state judge unless he first attempted to get the warrant from a federal judge and found that one was not "reasonably available." *See id.*

The district court denied the motion. While it accepted, for purposes of argument, that Rule 41 applied to the issuance of the warrant, it found that even if the Rule had been violated, there was no evidence of a deliberate disregard for the Rule,

nor evidence of any prejudice caused to Claridy by the violation. Accordingly, it denied the motion to suppress.

Following his conviction by a jury and sentencing, Claridy filed this appeal, challenging the denial of his motion to suppress. He also seeks, for the first time on appeal, suppression of a post-arrest inculpating statement, based on his claim that the statement was made more than six hours after his arrest.

## II

Claridy summarizes his principal argument as follows:

> [Detective] Gladstone, a federal law enforcement officer, violated Fed. R. Crim. P. 41 by applying to a state judge for a warrant, despite the fact that he was conducting a federal narcotics investigation and despite the fact that there was no indication that a federal magistrate was unavailable, contrary to the plain language of the Rule.[1]

He asserts that the search violated both Rule 41 and the Fourth Amendment and that suppression is the appropriate remedy.

The government argues that Rule 41 must not be interpreted to preclude officers of a joint task force from using state investigatory tools. It argues:

---

[1]Federal Rule of Criminal Procedure 41(b)(1) provides, in relevant part:

> At the request of a federal law enforcement officer or an attorney for the government: (1) a magistrate judge with authority in the district—*or if none is reasonably available, a judge of a state court* of record in the district—has authority to issue a warrant to search for and seize a person or property located within the district.

(Emphasis added).

> The State of Maryland has authorized its state law enforcement officers to bring search warrant applications, premised on violations of state law, to state judges, as was done here. Overseeing and guiding state law enforcement has traditionally been the role of state judges. Although these task-force officers are cross-designated as federal officers and empowered to enforce federal laws in addition to state laws, 90% of their work is in the state courts. The fact that the state of Maryland has accepted federal funds and partnered with the federal government to fight drug crime does not warrant the loss of state sovereignty . . . .

Alternatively, the government argues that any violation of Rule 41 was "ministerial in nature, and neither prejudiced [Claridy] nor was a product of deliberate disregard of the Rule." *See United States v. Simons*, 206 F.3d 392, 403 (4th Cir. 2000) (holding that "[n]onconstitutional violations of Rule 41 warrant suppression only when the defendant is prejudiced" or when the violation is an "intentional and deliberate disregard of a provision in the Rule").

The issue thus framed raises the question of when Rule 41 applies to search warrants obtained during the course of a joint federal-state law-enforcement task force investigating violations of both federal and state law.

We have addressed the issue on a limited basis in several prior cases. *See United States v. Williams*, 977 F.2d 866, 869-70 (4th Cir. 1992); *United States v. Smith*, 914 F.2d 565, 569 (4th Cir. 1990); *United States v. Johnson*, 451 F.2d 1321, 1322 (4th Cir. 1971). But in each case we concluded simply that the arguments advanced by counsel for the appellants were unsupported by the evidence and never articulated affirmatively the requirements for finding when Rule 41 applies in a joint federal-state law-enforcement investigation of violations of both federal and state law. In *Johnson*, the appellants

argued that Rule 41 applied because federal officers "partici-pated" in the search. *Johnson*, 451 F.2d at 1322. Without articulating when Rule 41 applies, we rejected the appellants' argument, concluding that the evidence showed that "federal agents were present simply as observers and that they did not participate in the search." *Id.*

In *Smith*, the appellants again argued that Rule 41 applied to a warrant obtained during the course of joint investigation because "(1) Drug Enforcement Administration agent was present at the motel during the search and (2) after the search, the matter became largely a federal prosecution." *Smith*, 914 F.2d at 569. Again we rejected the argument, stating, "[T]here is no evidence that [the state police officer] applied for the warrant at the direction or urging of a federal officer. . . . Although a DEA agent was present during the search and requested the motel manager to phone Smith and lure him from his room, this in itself is insufficient to render the search a federal one." *Smith*, 914 F.2d at 569. Again we did not artic-ulate affirmatively the basis for when Rule 41 applies to war-rants obtained during the course of an investigation conducted jointly by federal and state officers.

Finally, in *Williams*, the appellants argued that Rule 41 applied to a warrant obtained from a state (county) magistrate during the course of a federal-state investigation because the participating state officers "had initially intended to prosecute appellants federally." *Williams*, 977 F.2d at 869. We again rejected the argument, noting that Rule 41 can only apply when "the warrant application was made 'at the direction or urging of a federal officers,'" and there was no evidence to support that claim. 977 F.2d at 870 (quoting *Smith*, 914 F.2d at 569 (concluding that "there is no evidence that [the state officer] applied for the warrant at the direction or urging of a federal officer")). Other than to reiterate that Rule 41 requires that the application for the warrant be made by a fed-eral officer, we did not otherwise articulate any standards for determining whether Rule 41 or state law would apply in

obtaining search warrants during a joint federal-state investigation. Our holding was to conclude simply that appellants' argument was not supported by the evidence. *See id.* at 870 (holding that "the record here *reveals no evidence* suggesting that the warrant obtained by Detective Nido was issued in response to a directive or urging from [federal] Agent Kennedy, the only federal agent who accompanied the [state] officers during their arrest of appellants and search of the apartment"); *id.* (finding that there was also *no showing* that the state officers "initially intended to prosecute the case federally," as argued by the appellant).

Thus, we have in our earlier cases recognized, at most, that Rule 41 requires at least that a federal law enforcement officer, or someone at his direction or urging, apply for a warrant covered by the Rule. *See* Fed. R. Crim. P. 41(b). But we have not gone further to state the standard for when Rule 41 applies in obtaining search warrants during the course of a joint federal-state law-enforcement investigation into violations of both federal and state law or to state from where the standard is to be derived.

We begin in this case by noting that the Federal Rules of Criminal Procedure, including Rule 41, govern "criminal *proceedings*" in the United States courts and, "[w]hen a rule so states," *proceedings* before state and local judicial officers. Fed. R. Crim. P. 1(a) (emphasis added). Rule 41(b) is such a rule, authorizing state judges to issue search warrants if a federal magistrate judge is not "reasonably available." *See also* Fed. R. Crim. P. 3 (authorizing state judges to administer oaths for the issuance of a criminal complaint); Fed. R. Crim. P. 4(b)(1)(C), (c)(4)(A) (authorizing return of arrest warrants to state judges); Fed. R. Crim. P. 5(c)(1)(B) (authorizing state judges to conduct initial appearances after arrests). When a state judge acts under the authority of a federal rule, the "proceeding" is a federal proceeding. *See* Fed. R. Crim. P. 1(a)(2).

Despite the arguments made to us in this case, and indeed in the other earlier cases cited, urging us to focus almost

entirely on the character of the investigation in which the search warrant was obtained, *see Williams*, 977 F.2d at 870; *Smith*, 914 F.2d at 569; *Johnson*, 451 F.2d at 1322, the triggering condition for application of Rule 41 is not a finding that the *investigation* was federal in nature but a determination that the *proceeding* was a federal proceeding. Criminal investigations are not "proceedings" in United States courts or state courts, subject to court rules, but rather a function of the law enforcement officers in the Executive Branch. To be sure, investigations are typically designed to lead to proceedings through the prosecution of suspects, and officers frequently initiate proceedings to aid their investigations, by, for example, going to court to obtain a wiretap, a search warrant, or an arrest warrant. Nonetheless, Rule 41's application must hinge on whether the *proceeding*, as distinct from the investigation, was federal.

This is not to say that when federal agents conduct an investigation into violations of federal law and then proceed to apply for a search warrant in aid of that investigation, the question of whether the investigation was federal in nature does not map nicely onto the question of what body of law governs the issuance of the warrant. *See Williams*, 977 F.2d at 869-70; *Smith*, 914 F.2d at 569. Indeed, it does. The same is true of the situation where state officers conduct an investigation into violations of state law, applying for search warrants in aid of the investigation.

When, however, federal and state agencies cooperate and form a joint law-enforcement effort, investigating violations of both federal and state law, an application for a search warrant cannot categorically be deemed a "proceeding" governed by the Federal Rules of Criminal Procedure, based simply on the role that federal law-enforcement officers played *in the investigation*. *See*, *e.g.*, *Smith*, 914 F.2d at 569 (observing that mere involvement of federal officers in the execution of the search warrants does not trigger application of Rule 41). Such an investigation is conducted on behalf of both sovereigns,

and its object is to reveal evidence of crime—be it federal crime or state crime.

Moreover, there is nothing in the Federal Rules of Criminal Procedure that suggests that in a joint federal-state law-enforcement investigation, all search warrants must be obtained under Federal Rule of Criminal Procedure 41(b). Stated differently, nothing in the Federal Rules of Criminal Procedure suggests that a joint task force cannot use either federal or state investigatory tools governed, respectively, by federal or state law. *See United States v. Sellers*, 483 F.2d 37, 43 (5th Cir. 1973). Restricting warrants issued under state law to the requirements of Rule 41 in every joint investigation would "place officers acting jointly on the horns of a dilemma in deciding whether to charge state or federal crimes. Such officials should be free to make a considered choice based on the best available information and unencumbered by merely technical procedural rules." *Id.* at 44. We recognize, of course, that the decision with respect to the court in which charges are to be brought is often made by the Office of the United States Attorney and the state prosecutor, not the investigating officer.

Thus, the question of what law governs the application for a warrant cannot be resolved solely on the basis of the *investigation*'s character, but instead turns on the nature of the *judicial proceeding* undertaken during the course of the investigation, such as a proceeding initiated by the application for a search warrant. Therefore, when a member of a joint task force initiates a proceeding in state court to obtain a search warrant in furtherance of the joint investigation, it is not only relevant to understand the role of federal officers in obtaining the warrant and conducting the search, but it is also *necessary* to review the details of the proceeding itself to determine what law the warrant will serve and the scope of the warrant. Search warrants obtained during a joint federal-state investigation may be authorized by Federal Rule 41(b) or by state law and may serve to uncover violations of federal

law as well as state law. *See Sellers*, 483 F.2d at 43 (recognizing that Rule 41(b)'s authorization of state courts to issue warrants is "*in addition* to the *state-vested power* of those courts" to issue warrants (second emphasis added)).

In this case, the evidence shows that the HIDTA joint task force was an ongoing cooperative effort of the federal Drug Enforcement Agency and the Baltimore City and Baltimore County police, organized to conduct investigations into drug and gun violations of *both* federal and state law, and its investigations indeed led to both federal and state prosecutions, determined on the basis of the facts uncovered.

The record shows that during the course of the investigation by this joint task force, Detective Gladstone made an application to a Maryland state judge for a search warrant, presenting probable cause to believe that Claridy and Jones were violating Maryland state narcotics laws. The state judge issued the warrant, directing "[a]ny Police Officer of Baltimore City/Baltimore County . . . to search" the townhouse for evidence of violations of Maryland's narcotics law and "to seize" relevant evidence found there. The warrant directed the state officer to file a return after execution of the warrant with the state judge who had signed the warrant. Because the warrant alleged violations of state law, the state judge's authority to issue the warrant and supervise its return was conferred by Maryland law—*see* Md. Code Ann. Crim. Proc. § 1-203; Md. R. 4-601—and the authority of Detective Gladstone to execute the warrant came from his position as a "Police Officer of Baltimore City." Even though he was also deputized as a federal officer for purposes of participating in the joint task force, the warrant was directed to a police officer of Baltimore City or Baltimore County.

While state law might well authorize a judicial officer to issue a warrant to a federal officer to execute, making closer the question of whether the federal officer requested the warrant under Rule 41(b), in this case that argument is foreclosed

because the state judicial officer issued the warrant to a Baltimore City police officer for execution. Even if the warrant was directed more generally to any authorized officer, the fact that it commanded a search for evidence of a state-law violation would indicate that the warrant proceeding was a state proceeding, not one under Federal Rule 41(b).

In this case, we readily conclude that the application for the search warrant initiated a state proceeding governed by state law and that it was not a federal proceeding governed by Rule 41(b).

This is indicated further by the fact that the state judge commanded Detective Gladstone to make his return to the state judge, not to a federal magistrate judge, as he would have done under Rule 41. *See* Fed. R. Crim. P. 41(f)(1)(D). Moreover, there is no evidence that the return was then forwarded to the Clerk in the federal court, as would have been done had the proceeding been conducted under Rule 41. *See* Fed. R. Crim. P. 41(i).

Our conclusion that this was a state warrant proceeding governed by state law is consistent with the notion that Maryland confers authority to issue warrants independent of the authority conferred by Rule 41(b). *See Sellers*, 483 F.2d at 43. Because we conclude that the legal authorization for the search warrant in this case was Maryland law, not Rule 41(b), we reject Claridy's argument that the evidence should be suppressed because its issuance did not comply with the requirements of Rule 41(b).

Alternatively, if we were to assume, for purposes of discussion, that Rule 41(b) was applicable—presumably based on the facts deemed important by Claridy that the task force included federal officers and was federally funded and that the prosecution was ultimately under federal law—we would still reject his argument because the purported violations of

Rule 41(b) were nonconstitutional[2] and nonprejudicial. *See Simons*, 206 F.3d at 403. Nor is there any evidence that the purported violations were an intentional and deliberate effort to disregard or circumvent Rule 41. *See id.* Thus, even the violation claimed by Claridy would not justify suppression of the evidence seized under the warrant.

### III

Claridy also claims, for the first time on appeal, that a statement he made during the execution of the search warrant—that "he had a gun and some heroin, a hundred grams of heroin upstairs in the closet"—should be suppressed because it was made in violation of the *McNabb-Mallory* rule, as modified by 18 U.S.C. § 3501.

Section 3501 provides, in relevant part:

> In any criminal prosecution by the United States . . . , a confession made or given by a person who is a defendant therein, while such person was under arrest or other detention in the custody of any law-enforcement officer . . . , shall not be inadmissible solely because of delay in bringing such person before a magistrate judge . . . if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left

---

[2]For the first time on appeal, Claridy seeks to argue that the warrant was not in fact supported by probable cause and therefore that suppression should result because of a constitutional violation. If the record showed that he simply failed to make this argument in the district court, we could find the issue "forfeited" and consider review of it under the plain-error standard of Federal Rule of Criminal Procedure 52(b). But in this case, Claridy explicitly *waived* any objection to probable cause before the district court, admitting that the warrant was supported by probable cause. When a claim of constitutional error has been waived, it is not reviewable on appeal. *See United States v. Olano*, 507 U.S. 725, 732-33 (1993). Accordingly, we do not address the constitutional argument.

> to the jury and *if such confession was made or given by such person within six hours immediately following his arrest or other detention*: *Provided*, That the time limitation contained in this subsection shall not apply in any case in which the delay in bringing such person before such magistrate judge or other officer beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate judge or other officer.

18 U.S.C. § 3501(c) (first emphasis added). The Supreme Court recently applied § 3501(c), holding that statements made by an arrestee more than six hours after arrest and before the defendant's presentment to a magistrate judge may be suppressed if the court determines that the delay in presentment was "unreasonable or unnecessary under the *McNabb-Mallory* cases." *Corley v. United States*, 129 S. Ct. 1558, 1571 (2009). The *McNabb-Mallory* cases, in turn, held that even voluntary confessions made prior to an arrestee being presented to the magistrate judge should be suppressed if presentment was unreasonably delayed. *See McNabb v. United States*, 318 U.S. 332, 345 (1943); *Mallory v. United States*, 354 U.S. 449, 455 (1957). In short, a confession must be suppressed if (1) it was made prior to the arrestee's presentment to a magistrate judge; (2) the presentment to a magistrate judge was unreasonably or unnecessarily delayed; and (3) the confession was made more than six hours after the arrest or detention. *See Corley*, 129 S. Ct. at 1571.

Claridy contends that his statement, made after the search began—which was at about 2:00 p.m. on May 22, 2007—and before 6:36 p.m., when he was booked at Baltimore City Central Booking, should be suppressed because the statement was made more than six hours after his arrest. He argues that because he was arrested at about 11:00 a.m., a statement made between 2:00 p.m. and 6:36 p.m. could be more than six hours

after his arrest. Accordingly, he requests that the statement be suppressed or, alternatively, that the issue be remanded to the district court for factfinding.

Claridy did not preserve this issue in the district court. Therefore, we review his argument under the plain-error standard. Under Rule 52(b), for a court of appeals to correct an error not raised in the district court, "there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (quoting *Olano*, 507 U.S. at 732). Plain error review is discretionary, however, and a court of appeals should exercise its discretion to notice a forfeited error only if the error "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* at 467 (quoting *Olano*, 507 U.S. at 732). The burden of demonstrating the requirements of plain error falls on Claridy. *See Olano*, 507 U.S. at 734-35.

In this case, Claridy has failed to carry his burden. First, he is unable to demonstrate that the statement he seeks to suppress was made more than six hours after his arrest. The evidence shows that Claridy was arrested at 11:00 a.m. and thereafter taken to the townhouse where he lived at approximately 2:00 p.m. He made the statement during the course of the search of the townhouse that followed, but probably early on. As Detective Gladstone testified, "So upon making entry, [Claridy] was secured on the first floor and we began . . . executing the search warrant and Mr. Claridy related to Agent Malone that he had a gun and some heroin, a hundred grams of heroin upstairs in the closet." At that point in the search, no items had yet been recovered. After the statement, the officers recovered the handgun and heroin where Claridy had told them they were located, and the officers also recovered scales, marijuana, and paperwork in Claridy's name. After completing the search of the townhouse, the officers then took Claridy to two other addresses that were searched before they drove him to Baltimore City Central Booking, where he was booked at 6:36 p.m. In light of this sequence, Claridy simply cannot

demonstrate that he made his statement after 5:00 p.m. (six hours after his arrest at 11:00 a.m.). Indeed, all indications suggest that he made the statement during the early portion of the search, which began at 2:00 p.m. Regardless of precisely when he made the statement, the burden is on Claridy to demonstrate that he made the statement more than six hours after his arrest and that this period was unreasonable in the circumstances. This he has failed to do.

In addition, the error Claridy claims could not have affected his substantial rights, inasmuch as the statement contributed nothing to the search or to the prosecution. Shortly after Claridy was arrested at about 11:00 a.m., he told Detective Gladstone that there was a key on his key ring that opened the townhouse front door and that "he had a handgun in the residence, in the bedroom closet." Moreover, because the handgun was visible upon an inspection of the closet, it surely would have been discovered during the course of the search, even had Claridy said nothing.

For these reasons, we will not take notice of the error claimed by Claridy, if indeed there was error.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

TRAXLER, Chief Judge, concurring:

I concur in Parts I and III of Judge Niemeyer's opinion and in the result reached in Part II. However, because my analysis of Claridy's claim that the district court erred in refusing to suppress the fruit of the search warrant diverges from Judge Niemeyer's, I write separately regarding that claim.

In analyzing Claridy's motion to suppress this evidence, the district court noted that a "threshold issue is whether the

search was federal or state in nature, because compliance with Rule 41 is only required for *federal* searches." *United States v. Claridy*, 2007 WL 4554017, at *3 (D. Md. Dec. 18, 2007). In this regard, the court stated that "the test to be applied in determining whether a warrant must be obtained in compliance with Rule 41(b) is whether the warrant application was made at the direction or urging of a federal officer." *Id.* (internal quotation marks and alteration omitted). The court concluded that the test was satisfied and that Rule 41 was triggered. *See id.* In so doing, the district court noted that the investigation and searches were conducted by members of the task force, all of whom were federal officers or federally deputized. *See id.* The court also observed that after Claridy was arrested, Detective Gladstone had told him that he was the target of a federal drug investigation and Claridy "was designated as a federal detainee by the Division of Pretrial Detention and Services of the Maryland Department of Public Safety and Correctional Services." *Id.*

Having found that Rule 41 applied to the search, the district court did not explicitly decide whether Gladstone had violated the rule. *See id.* at *4. The court did not do so because it concluded that even if a violation occurred, the violation would not warrant suppression of the fruit of the searches because it did not amount to a constitutional violation, the defendants were not prejudiced by any violation of the rule, and neither Gladstone nor any other task force member had acted with deliberate disregard for Rule 41(b). *See id.*

The government now argues that we should affirm the denial of Claridy's suppression motion on the basis that the district court erred in concluding that Gladstone was required to comply with federal Rule 41 in obtaining the search warrant. The relevant facts are not in dispute, and the correctness of the district court's legal conclusion that those facts required Gladstone to comply with federal Rule 41 in obtaining the warrant is an issue we review de novo. *See United States v. Kimbrough*, 477 F.3d 144, 147 (4th Cir. 2007) (explaining

that we review fact findings underlying a suppression order for clear error and review de novo the legal conclusions underlying such an order).

Gladstone, a Baltimore City police officer, obtained his warrant under Maryland Code of Criminal Procedure § 1-203, which provides in pertinent part:

> A circuit court judge or District Court judge may issue forthwith a search warrant whenever it is made to appear to the judge, by application as described in paragraph (2) of this subsection, that there is probable cause to believe that:
>
> > (i) a misdemeanor or felony is being committed by a person or in a building, apartment, premises, place, or thing within the territorial jurisdiction of the judge; or
> >
> > (ii) property subject to seizure under the criminal laws of the State is on the person or in or on the building, apartment, premises, place, or thing.

Md. Code, Crim. Proc. § 1-203(a)(1). Federal Rule of Criminal Procedure 41(b), with which Claridy claims Gladstone was required to comply in obtaining his warrant, provides, in pertinent part:

> **Authority to Issue a Warrant.** At the request of a federal law enforcement officer or an attorney for the government:
>
> > (1) a magistrate judge with authority in the district—or if none is reasonably available, a judge of a state court of record in the district — has authority to issue a warrant to

> search for and seize a person or property located within the district.

Fed. R. Crim. P. 41(b)(1).

In my view, the inquiry into whether Gladstone was required to comply with Rule 41 in obtaining the warrant must begin with *United States v. Williams*, 977 F.2d 866 (4th Cir. 1992). In *Williams*, a state police officer obtained a search warrant from a county magistrate based on probable cause that evidence of crack cocaine crimes would be found at the place to be searched. As part of his training, a federal officer accompanied state officers in executing the warrant. The defendants, upon their arrests, were "booked . . . as federal prisoners," and an assistant United States Attorney indicated that they would be federally prosecuted. *Id.* at 868. Seeking to suppress the fruit of the search, the defendants contended that the officer had been required to obtain the warrant in compliance with Rule 41 because the officers had intended from the beginning that the case would be prosecuted federally. The district court rejected the defendants' argument, finding that the decision to proceed federally was made after the search warrant had been obtained and executed. The defendants reiterated their argument on appeal, and we affirmed. In so doing, we explained that "the test to be applied in determining whether a warrant must be obtained in compliance with Rule 41(a) is whether the warrant application was made 'at the direction or urging of a federal officer.'" *Id.* at 870 (quoting *United States v. Smith*, 914 F.2d 565 (4th Cir. 1990)); *see also United States v. Clyburn*, 24 F.3d 613, 616 (4th Cir. 1994) (applying the same test). Because that test had not been satisfied and because there had not been any showing that the officers had intended from the beginning that the case would be prosecuted federally, we held that the warrant had been properly obtained. *See Williams*, 977 F.2d at 870.

Thus, under the test set out in *Williams*, the critical time is when the warrant application is made. It is as of that time that

we look to see if the warrant was sought "at the direction or urging of a federal officer." Events that occur and statements that are made after the warrant is applied for, while not necessarily irrelevant to that inquiry, must be considered with the realization that the character of an investigation can change as the investigation progresses, as can the intent as to what jurisdiction should prosecute the case. Often this depends on what is discovered during the search and on other factors that may interest a particular law enforcement agency or prosecutor.

The evidence here is uncontradicted that Gladstone was a state law enforcement officer who was also a member of a state-federal task force. Because he had been assigned by his department to the task force, he had been deputized as a federal officer. However, this designation alone did not make all of his activities those of a federal officer, nor did it make all of his investigations federal. In fact, the vast majority of his work continued to be the investigation of crimes for prosecution in the state courts of Maryland. He testified that during his time on the task force, he had participated in hundreds of arrests related to narcotics violations and that 90% of those crimes were prosecuted in state court.

In this particular case, Gladstone testified that the investigation of Claridy was "conducted by local law enforcement agencies." J.A. 86. When Gladstone received his initial information from his confidential informants, he shared it only with his sergeant, a Baltimore City police officer. Gladstone then undertook, with the help of Baltimore City Police Detective William Bearde, to confirm some of the information and to apply for the warrants once he had obtained the information he needed. There is not one mention in the record of involvement by any member of any federal law enforcement agency before the search warrants were issued. For Gladstone, it was simply business as usual, and from this there can be but one conclusion—no federal officer directed or urged Gladstone to get these warrants.

Claridy argues that the evidence shows Gladstone intended the case to be prosecuted in federal court all along. No evidence supports that conclusion, however. Gladstone testified that, prior to seeking the warrant, he had not reached out to any federal authority in an attempt to have Claridy's case prosecuted federally. And as I have noted, in 90% of the narcotics-related arrests that Gladstone participated in during his time with the task force, the suspects were prosecuted in state court. Gladstone's comment to Claridy that he had been the subject of a federal investigation was made only after execution of one of the warrants uncovered $7,999 in Claridy's car. The comment gave no indication that Gladstone viewed the case as anything other than a normal task-force investigation. Indeed, Gladstone testified that he only described it as "federal" to emphasize to Claridy the "seriousness of the situation." J.A. 93. Nor did Claridy's designation as a federal detainee *after* execution of the warrants indicate that any decision that the case would be federally prosecuted had been made beforehand. *See Williams*, 977 F.2d at 870 (affording no significance to the fact that the defendant was booked federally). And, although some of the officers assisting in the execution of the search warrants were DEA agents, I note that the use of other task force officers as support for an arrest or search is common, and their performing this role would not support an inference that a decision had been made to federally prosecute the case.

Under these circumstances, I would hold that the only conclusion that could be drawn from the record before us is that Gladstone was not required to comply with federal Rule 41 in obtaining the warrant relating to state-law crimes, but rather was free to use the same Maryland procedure that any other Baltimore city police officer could employ. In any event, for the reasons Judge Niemeyer explains, even assuming Gladstone violated Rule 41, such a violation would not warrant suppression of the fruit of the search. *See ante*, at 12-13 & n.2. I therefore agree that the district court properly denied Claridy's suppression motion.